USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/23/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ X
JOSE MINAYA,                   :
                               :
            <u>Petitioner</u>,       :
                               :   No. 14 Civ. 2479 (JFK)
     -against-                 :   No. 10 Cr. 1179 (JFK)
                               :   **OPINION & ORDER**
UNITED STATES OF AMERICA,      :
                               :
            <u>Respondent</u>.       :
------------------------------ X

<u>APPEARANCES</u>
FOR PETITIONER JOSE MINAYA
     Pro se

FOR RESPONDENT UNITED STATES OF AMERICA
     Jonathan Cohen, Esq.

**JOHN F. KEENAN, United States District Judge:**

   Before the Court is Petitioner Jose Minaya's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Minaya asserts that he was denied effective assistance of appellate counsel in violation of the Sixth Amendment and that the Government committed prosecutorial misconduct at his trial in violation of his right to Due Process under the Fourteenth Amendment.  For the reasons stated below, Minaya's motion is denied.

1

# I. Background

## A. Minaya's Arrest and Indictment

Between 2007 and November 2010, Minaya participated in a conspiracy to possess and distribute cocaine and heroin. (See Superseding Indictment ¶¶ 1-3, United States v. Minaya, No. 10 Cr. 1179 (Dec. 6, 2011), ECF No. 29.) On November 23, 2010, Minaya was arrested with Lisandro Antonio Tavarez Guzman in Manhattan, New York, where they attempted to sell 500 grams of heroin to a customer who was actually an undercover federal agent. (See Pet'r's Mem. at 2; Resp't Mem. in Opp'n at 9.) On December 6, 2011, a superseding indictment charged Minaya with three counts: (1) conspiracy to distribute at least five kilograms of cocaine and 100 grams of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B); (2) distributing and possessing with the intent to distribute heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); and (3) distributing and possessing with the intent to distribute 100 grams of heroin in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B). (See Superseding Indictment.)

## A. Minaya's Trial

Minaya's trial took place in early 2012. At trial, Guzman appeared as a witness for the Government and testified that on numerous occasions he and Minaya participated in sales of

cocaine and heroin. (See, e.g., Tr. 513:16-20, 518:1-17, 519:2-8, United States v. Minaya, No. 10 Cr. 1179.[1]) Prior to Minaya's trial, Guzman pleaded guilty to charges concerning the distribution and possession of heroin and cocaine, and a related conspiracy. (Tr. 491:8-22.) In connection with his guilty plea, Guzman also entered into a cooperation agreement with the Government, whereby he agreed to tell the truth regarding his prior criminal activities and otherwise cooperate, including providing testimony. (Tr. 492:4-8, 493:17-24.) At the time he testified in Minaya's trial, Guzman had not yet been sentenced. (Tr. 491:23-24.)

At various points during the trial, the Government elicited testimony from Guzman that demonstrated he had initially provided inaccurate information during proffer sessions, which he later corrected. For example, on direct examination, Guzman testified that he initially told the Government that he had "never sold heroin until the day of [his] arrest," but subsequently admitted that he had sold heroin on several

---

[1] In its opposition, the Government refers to pages in the transcript of Minaya's trial under an alternative numbering system because it references a relevant portion of the transcript, which was submitted as an appendix to Minaya's appellate brief. (See Resp't Mem. in Opp'n at 1 n.1.) In this Opinion, the Court refers to and cites relevant pages of the trial transcript according to its original pagination.

occasions prior to his arrest. (Tr. 532:19-533:4.) Later, Guzman testified that he initially told the Government that he, along with a supplier named Ambiori, merely intended to sell "cut,"[2] but subsequently admitted that they intended to sell heroin, not cut. (Tr. 552:5-16.)

On cross-examination, Minaya's trial counsel questioned Guzman's veracity and credibility. Guzman reiterated that, in his initial meetings with the Government, he said that he had never sold heroin prior to the date of his arrest. (Tr. 583:15-18.) Guzman testified that he subsequently "changed [his] story." (Tr. 583:19-24.) Guzman also reiterated his earlier recounting about intending to sell cut rather than heroin. Initially, Guzman told the Government that he and Ambiori intended to sell a customer only cut. (Tr. 587:13-23.) Then, after taking a break to speak to his attorney, Guzman "changed [his] story" and told the Government that he actually thought that Ambiori would bring heroin, not cut, to sell to a customer. (Tr. 589:7-12, 591:1-8.)

The jury found Minaya guilty on all three counts. (See Judgment at 1, United States v. Minaya, No. 10 Cr. 1179 (June 18, 2012), ECF No. 58.) On June 18, 2012, Minaya was sentenced

---

[2] "Cut" refers to adulterants used to dilute cocaine. (Tr. 508:12-15.)

4

to 132 months' imprisonment followed by a term of supervised release of five years, and a mandatory special assessment of $300. (Id.)  Minaya filed a notice of appeal on June 27, 2012. (See Notice of Appeal, United States v. Minaya, No. 10 Cr. 1179 (June 27, 2012), ECF No. 60.)

### B. Minaya's Appeal

On appeal, Minaya was represented by appointed counsel and his appellate brief focused on two arguments.  First, Minaya argued that the evidence that he conspired to distribute at least five kilograms of cocaine—that is, Guzman's testimony—was not legally sufficient to sustain the verdict.  Second, in the alternative, Minaya argued that Guzman's testimony was so incredible that a jury could not reasonably have relied on it. See United States v. Minaya, 544 F. App'x 12, 14 (2d Cir. 2013). By summary order on November 1, 2013, the Second Circuit affirmed the judgment of this Court, concluding that the testimony was sufficiently specific "to establish the quantity of cocaine that Minaya conspired to distribute" and that "the jury was entitled to credit" Guzman's testimony. Id. at 14-15.

### C. Minaya's § 2255 Motion

On April 4, 2014, Minaya filed the instant motion to vacate, set aside, or correct his sentence under 28 U.S.C § 2255.  Minaya asserts two grounds for relief:  (1) he was denied

5

effective assistance of appellate counsel because, on direct appeal of his conviction, counsel failed to consult with or otherwise communicate with him prior to filing an appellate brief, and (2) the Government committed prosecutorial misconduct at trial by presenting allegedly perjured testimony. (Pet'r's Mem. at 3-9.) Additionally, Minaya attached seven letters he authored as exhibits to his memorandum of law in support of his petition. Five of these letters were sent to Minaya's appellate counsel. In one letter, dated November 19, 2012, Minaya set forth ten items he wanted counsel "to be aware of," including his belief that Guzman gave false testimony. (Id. Ex. A; see also id. Ex. F.) In subsequent letters, Minaya requested that counsel forward materials related to his appeal in paper format so that he could review them. (Id. Exs. B, C, D.) Minaya also attached a letter to the clerk of court for the Second Circuit requesting a transcript of the appellate argument and a request for appointment of new counsel for purposes of Minaya's appeal. (Id. Exs. E, G.)

## II. Applicable Law

Under 28 U.S.C. § 2255(a), a federal prisoner may collaterally challenge his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States." To obtain relief under § 2255, a petitioner

6

must establish "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Because Minaya is appearing pro se, the Court construes his arguments liberally and interprets them to raise the strongest arguments that they suggest. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

### A. Ineffective Assistance of Counsel

Ineffective assistance of counsel is a basis for relief under § 2255 because the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. See Morales v. United States, 635 F.3d 39, 42-43 (2d Cir. 2011); see also Strickland v. Washington, 466 U.S. 668, 686 (1984) ("[T]he Court has recognized that 'the [Sixth Amendment] right to counsel is the right to the effective assistance of counsel.'" (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970))). A claim of ineffective assistance of counsel has two components. First, a petitioner must show that counsel's performance was deficient. Strickland, 466 U.S. at 687. Second, the petitioner must show that he or she suffered prejudice as a result of

7

counsel's deficient performance. Id.; Tavarez v. Larkin, 814 F.3d 644, 648 (2d Cir. 2016). The two-prong Strickland test "applies to the evaluation of appellate counsel as well as trial counsel." Clark v. Stinson, 214 F.3d 315, 321 (2d Cir. 2000); see also Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015) ("The Sixth Amendment guarantees the right to effective representation on direct appeal.").

To satisfy the first (or deficiency) prong of the Strickland test, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In assessing a claim that counsel's representation did not meet the constitutional minimum, a court should "indulge a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance." Lynch, 789 F.3d at 311 (quoting Strickland, 466 U.S. at 689) (alteration in original). In the appellate context, "counsel has no duty to raise every non-frivolous issue that could be raised." Id. A petitioner "may establish constitutionally inadequate performance [of appellate counsel] if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id. (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)) (alteration in original).

To satisfy the second (or prejudice) prong of the Strickland test, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694. In this context, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. A prejudice determination "may be made with the benefit of hindsight." Lynch, 789 F.3d at 311 (quoting Mayo, 13 F.3d at 534).

**B. Prosecutorial Misconduct and Perjured Testimony**

"Prosecutorial misconduct may provide a basis for § 2255 relief only when such conduct constitutes a denial of due process." Jones v. United States, Nos. 92 CR. 925 (LBS), 99 Civ. 5738 (LBS), 2000 WL 987271, at *5 (S.D.N.Y. July 17, 2000). "Unless the misconduct results in prejudice which amounts to a denial of due process, it is not cognizable as a claim for relief in a § 2255 motion." Id.

With regard to Minaya's petition, however, another standard is likely more relevant. A claim for wrongful conviction based on allegedly perjured testimony is properly analyzed "under the Due Process Clause of the Fourteenth Amendment." Drake v. Portuondo, 321 F.3d 338, 344-45 (2d Cir. 2003) (citing Napue v. Illinois, 360 U.S. 264, 269 (1959)). To "challenge a conviction

9

because of a prosecutor's knowing use of false testimony, a defendant must establish that (1) there was false testimony, (2) the Government knew or should have known that the testimony was false, and (3) there was 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" United States v. Helmsley, 985 F.2d 1202, 1205-06 (2d Cir. 1993) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)).

### III. Discussion

#### A. Minaya Does Not Establish That He Received Ineffective Assistance of Counsel

In his petition, Minaya raises various arguments in support of his contention that appellate counsel's representation was constitutionally ineffective. First, Minaya asserts that counsel failed entirely to contact him. Second, Minaya states that counsel's failure to communicate with him precluded counsel from focusing on Minaya's preferred arguments, including an argument regarding alleged prosecutorial misconduct at Minaya's trial. Third, Minaya cites counsel's failure to provide him with a transcript of the appellate hearing in a format that Minaya could review. The Court concludes that Minaya's arguments do not show that he received ineffective assistance of appellate counsel and do not entitle him to habeas relief.

With respect to Minaya's first argument, counsel's failure to communicate with Minaya does not establish a claim for ineffective assistance of counsel. (See Pet'r's Mem. at 3.) "An appellate attorney's failure to consult with his client is not a per se violation of a defendant's Sixth Amendment rights." Williams v. Comm'r N.Y.S. Dep't of Corr., Nos. 07 Civ. 5496(WHP)(FM), 07 Civ. 5514(WHP)(FM), 2011 WL 5301766, at *21 (S.D.N.Y. Oct. 31, 2011) (citing Buitrago v. Scully, 705 F. Supp. 952, 955 (S.D.N.Y. 1989)). An attorney's mere "failure to consult" his or her client, id., does not necessarily fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Thus, Minaya is not entitled to habeas relief on this ground. See Williams, 2011 WL 5301766, at *21.

Similarly, Minaya's argument that counsel allegedly failed to incorporate the arguments Minaya viewed as "strongest" into his appeal does not demonstrate ineffective assistance. (See Pet'r's Mem. at 3-4, 7.) "Although it may be desirable and productive, the Constitutional right to effective assistance of counsel does not encompass the requirement that an attorney consult with his client to discuss the alleged [issues] that his client wishes to pursue." McIntyre v. Duncan, No. 03-CV-0523 (ADS), 2005 WL 3018698, at *3 (E.D.N.Y. Nov. 8, 2005); see also Vinson v. Brown, No. 07 CIV. 2972(VB)(PED), 2011 WL 7640001, at

*18 (S.D.N.Y. July 11, 2011) (holding that petitioner did not establish ineffective assistance by appellate counsel who failed to consult with petitioner or learn that petitioner wanted to raise a specific argument on direct appeal) adopted by, 2012 WL 1129271 (S.D.N.Y. Mar. 29, 2012); Campbell v. Greene, 440 F. Supp. 2d 125, 152 (N.D.N.Y. 2006) (holding that petitioner did not establish ineffective assistance by appellate counsel who failed to consult with petitioner prior to filing appellate brief or incorporate petitioner's suggested arguments in appellate brief). These cases demonstrate that counsel's failure to "incorporate in [an] appellate brief the arguments asserted" by Minaya, Campbell, 440 F. Supp 2d at 152, does not fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688.

The specific argument that Minaya references in his petition that counsel failed to raise is that the Government committed prosecutorial misconduct at his trial. (See Pet'r's Mem. at 5-7.) However, Minaya does not demonstrate that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Lynch, 789 F.3d at 311 (quoting Mayo, 13 F.3d at 533); see also Smith v. Robbins, 528 U.S. 259, 288 (2000) (stating that "it is still possible to bring a Strickland claim based on counsel's failure to raise a

12

particular claim, but it is difficult to demonstrate that counsel was incompetent" because doing so requires a "showing that a particular nonfrivolous issue was clearly stronger than issues that counsel did present").[3] Here, Minaya provides no evidence for the proposition that the argument regarding prosecutorial misconduct was clearly stronger than the two issues that counsel actually presented, i.e., the sufficiency of the evidence and the credibility of Guzman's testimony. See Minaya, 544 F. App'x at 14. Even assuming that the prosecutorial misconduct argument had some merit, counsel's decision not to raise it was within the "wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001) (internal quotation marks omitted); see also Parks v. Sheahan, 104 F. Supp. 3d 271, 288 (E.D.N.Y. 2015) ("[T]he choice

---

[3] As discussed further below, the prosecutorial misconduct argument that Minaya desired counsel to press on appeal is without merit. "Failure to make a meritless argument does not amount to ineffective assistance." United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), disapproved on other grounds, Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 403 n.8 (2003).

of which issues to raise on appeal is a matter of professional judgment left to appellate counsel."). Accordingly, Minaya's argument that counsel failed to argue prosecutorial misconduct does not establish a claim for ineffective assistance of counsel.

With respect to Minaya's third argument, counsel's failure to provide him with a transcript of the argument in his appeal does not constitute ineffective assistance of counsel. (See Pet'r's Mem. at 4.) "Even assuming for purposes of argument that a failure to provide a defendant with a transcript of an appellate argument could constitute deficient performance, there would be no resulting prejudice." Duncan v. Fischer, 410 F. Supp. 2d 101, 118 (E.D.N.Y. 2006). The fact that counsel failed to provide a transcript of the appellate argument to Minaya after the argument took place has no logical connection to the possibility—let alone probability—of a "different" result in that proceeding. See Strickland, 466 U.S. at 694.

Minaya's remaining arguments on this front are without merit. Minaya cites Slappy v. Morris, 649 F.2d 718 (9th Cir. 1981), for the proposition that the right to counsel includes "the right to a meaningful attorney-client relationship." (Pet'r's Mem. at 5.) However, the Supreme Court reversed the Ninth Circuit's decision in Slappy and "reject[ed] the claim

14

that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 14 (1983). Moreover, although Minaya takes issue with counsel's "perfunctory manner," (Pet'r's Mem. at 7), the Sixth Amendment does not guarantee complete satisfaction with counsel's performance. See United States v. Cronic, 466 U.S. 648, 657 n.21 (1984) ("If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance.").

Finally, with respect to the second prong of the Strickland test, the Court observes that Minaya's petition does not establish that counsel's allegedly deficient performance resulted in any prejudice to Minaya. That is, Minaya does not show that, but for any of the alleged defects in counsel's performance analyzed above, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Minaya's wishes to consult with counsel and review a transcript of the appellate argument are understandable. His arguments, however, do not establish a violation of the Sixth Amendment. Accordingly, habeas relief is not warranted on these grounds.

15

## B. Minaya Does Not Establish That Prosecutorial Misconduct Occurred at Trial

As noted above, Minaya also contends that the Government committed prosecutorial misconduct during his trial. First, Minaya asserts that the Government knowingly presented and failed to correct false evidence in the form of allegedly perjured testimony. Second, Minaya's petition, read liberally, appears to base a claim of prosecutorial misconduct on the Government's presentation of a witness who allegedly had violated his cooperation agreement. The Court finds that Minaya's arguments do not show that prosecutorial misconduct occurred at his trial and, thus, do not warrant habeas relief.

With respect to his first argument, Minaya does not demonstrate that the Government knowingly presented, and failed to correct, perjured testimony. (Pet'r's Mem. at 7-9.) Although Minaya styles this claim as one establishing prosecutorial misconduct at his trial, Minaya's argument actually sounds in the nature of an allegedly wrongful conviction based on perjured testimony. Accordingly, Minaya must establish that "(1) there was false testimony, (2) the Government knew or should have known that the testimony was false, and (3) there was 'any reasonable likelihood that the false testimony could have

16

affected the judgment of the jury.'" Helmsley, 985 F.2d at 1205-06 (quoting Agurs, 427 U.S. at 103).

Here, Minaya does not point to any examples of perjured or false testimony. Perjury is "[t]he act or an instance of a person's deliberately making material false or misleading statements while under oath." BLACK'S LAW DICTIONARY 958 (8th ed. 2005). To be sure, Minaya identifies excerpts of the trial transcript where Guzman admitted to having lied or changed his story during proffer discussions with the Government. (Pet'r's Mem. at 5-6.) Both the Government, on direct examination, and Minaya's trial counsel, on cross examination, elicited testimony from Guzman to that effect. (See, e.g., Tr. 532:19-533:4, 552:5-16, 583:15-20, 589:7-12, 591:1-8.)

These exchanges, however, fail to show anything false or misleading about Guzman's testimony at trial. That is, the fact that Guzman admitted to having lied to the Government previously, in proffer sessions, does not mean that Guzman was committing perjury—lying under oath—at Minaya's trial.[4] Minaya claims that Guzman's testimony was "incredible," (Pet'r's Mem. at 8), but assessing the credibility of a witness is a classic

---

[4] Even inconsistent testimony does not necessarily qualify as perjury. "[E]ven a direct conflict in testimony does not in itself constitute perjury." United States v. Gambino, 59 F.3d 353, 365 (2d Cir. 1995).

17

question of fact to be determined by the jury. See, e.g., United States v. Carace, 796 F.3d 176, 192 (2d Cir. 2015) ("Assessments of witness credibility and choices between competing inferences lie solely within the province of the jury." (internal quotation marks omitted)); United States v. O'Connor, 650 F.3d 839, 855 (2d Cir. 2011) ("It is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory, and even untruthful in some respects was nonetheless entirely credible in the essentials of his testimony." (internal quotation marks omitted)). In rendering a verdict, the jury considered Guzman's testimony and found it credible; on direct appeal of Minaya's conviction, the Second Circuit determined that the jury was entitled to do so. See Minaya, 544 F. App'x at 15. Thus, Minaya does not establish the existence of false testimony at his trial, that the Government had knowledge of false testimony, or any reasonable likelihood that false testimony could have affected the jury's judgment. See Helmsley, 985 F.2d at 1205-06.

Minaya's second argument—that the Government committed prosecutorial misconduct by relying on Guzman, who was allegedly in violation of his cooperation agreement and had "obstructed justice"—is also without merit. (Pet'r's Mem. at 8.) First, Minaya provides no support for the proposition that presenting a

18

witness who has violated a cooperation agreement constitutes prosecutorial misconduct. Second, whether Guzman violated his cooperation agreement with the Government is "a matter for the Government," not Minaya, "to decide." See United States v. Perez, No. 01 CR. 848(SWK), 2003 WL 721568, at *8 (S.D.N.Y. Feb. 28, 2003). Third, even assuming Minaya had the authority to determine whether Guzman violated the terms of his cooperation agreement, the timeline that Minaya references does not demonstrate that Guzman violated his cooperation agreement. According to Minaya, Guzman violated his cooperation agreement when, during post-arrest detention, Guzman instructed his wife to distribute the cocaine that remained at his home. (Pet'r's Mem. at 7.) Guzman testified that he was arrested in November 2010, and that he gave his wife instructions to sell the remaining cocaine sometime during the "first few days" after his arrest. (Tr. 556:5-15, 559:20-22.) According to Guzman, the conversation with his wife took place before he started cooperating with the Government. (Tr. 553:3-8, 609:18-20.) He also testified that he entered into a cooperation agreement one year after his arrest. (Tr. 557:10-24.) It follows that Guzman could not have violated the terms a cooperation agreement by his behavior in November 2010 because there was no such cooperation agreement in existence at that time.

Accordingly, Minaya's arguments do not establish a violation of the Due Process Clause of the Fourteenth Amendment and do not warrant habeas relief.

## Conclusion

For the reasons described above, Minaya's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is denied. There is no need for an evidentiary hearing because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The Court declines to issue a certificate of appealability because Minaya has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Krantz v. United States, 224 F.3d 125, 127 (2d Cir. 2000). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to close the case and enter judgment for the Government.

**SO ORDERED.**

Dated: New York, New York
May 23, 2017

John F. Keenan
United States District Judge